UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KENDALL CENTRAL SCHOOL DISTRICT,

                Plaintiff,

v.

CENTURY INDEMNITY COMPANY,
AS SUCCESSOR TO CCI INSURANCE
COMPANY, AS SUCCESSOR TO
INSURANCE COMPANY OF NORTH
AMERICA,

                Defendant.
_____

**DECISION AND ORDER**

6:24-CV-06200 EAW

## INTRODUCTION

Plaintiff Kendall Central School District ("Plaintiff" or "Kendall") commenced this action on March 6, 2024, against Defendant Century Indemnity Company ("Defendant" or "Century") as successor to CCI Insurance Company of North America, as successor to Insurance Company of North America ("INA"), in New York State Supreme Court, Orleans County.[1] (Dkt. 1-1 at 25-35). On April 5, 2024, Defendant removed the action to this Court. (Dkt. 1).

Pending before the Court are the parties' cross-motions for summary judgment (Dkt. 22; Dkt. 23), and Defendant's motion to seal (Dkt. 21). For the following reasons,

---

[1] Plaintiff's complaint originally named Insurance Company of North America, INA Corporation, and Chubb Insurance Company as defendants but the parties stipulated that any references to INA Corporation and Chubb Insurance Company in Plaintiff's complaint are deemed to refer to Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America, and the caption was changed to reflect this stipulation. (Dkt. 3).

- 1 -

Defendant's motion for summary judgment is granted, its motion to seal is denied, and Plaintiff's motion for summary judgment is denied.

## BACKGROUND

**I.      Factual Background**

Kendall is a central school district organized and operating under New York State Education Law.  (Dkt. 23-4 at ¶ 1; Dkt. 33-4 at ¶ 1).  Century is the successor in interest to CCI Insurance Company, which is the successor to Insurance Company of North America ("INA").  (Dkt. 23-4 at ¶ 2; Dkt. 33-4 at ¶ 2).  At issue in this litigation are two liability insurance policies issued by INA to Kendall covering the periods from May 10, 1968 to May 10, 1971, and from May 10, 1971 to May 10, 1973.  (Dkt. 23-4 at ¶¶ 9, 10; Dkt. 33-4 at ¶¶ 9, 10).

On or about June 3, 2021, Robert Ward ("Ward") commenced a lawsuit against Kendall in New York State Supreme Court, Orleans County.  (Dkt. 23-4 at ¶¶ 3, 13; Dkt. 33-4 at ¶¶ 3, 13; Dkt. 22-1 at ¶ 4; Dkt. 32-1 at ¶ 4).  Kendall was served with Ward's complaint on June 16, 2021.  (Dkt. 23-4 at ¶ 14; Dkt. 33-4 at ¶ 14).  In his lawsuit, Ward alleges that he was sexually abused by Bruce Schlageter ("Schlageter"), a teacher employed by Kendall in the early 1970's.  (Dkt. 23-4 at ¶¶ 13, 20; Dkt. 33-4 at ¶¶ 13, 20; Dkt. 22-1 at ¶ 5; Dkt. 32-1 at ¶ 5).  Ward alleges that Kendall was negligent in the hiring, supervision and retention of Schlageter, and that Kendall's negligence was the proximate cause of Ward's personal injuries.  (Dkt. 23-4 at ¶ 5; Dkt. 33-4 at ¶ 5; Dkt. 22-1 at ¶ 6; Dkt. 32-1 at ¶ 6).  Prior to his hiring, Schlageter was arrested for and convicted of sexual assault and his wife, Grace Schlageter, was also a teacher at Kendall High School.  (Dkt. 22-1 at

¶¶ 12, 13; Dkt. 32-1 at ¶¶ 12, 13). Ward's claims against Kendall, which would otherwise have been time-barred, were revived by the New York State Child Victim's Act, New York Civil Practice Law and Rules § 214-g, passed in 2019. (Dkt. 23-4 at ¶ 4; Dkt. 33-4 at ¶ 4).

Immediately after being served with Ward's complaint, Kendall notified its current insurance carrier about the claim. (Dkt. 23-4 at ¶ 21; Dkt. 33-4 at ¶ 21). That carrier denied coverage because the alleged negligence and bodily harm occurred prior to the current policy term. (Dkt. 23-4 at ¶ 21; Dkt. 33-4 at ¶ 21). As a result, Kendall defended the action at its own expense. (Dkt. 23-4 at ¶ 22; Dkt. 33-4 at ¶ 22). Kendall searched for records relating to insurance coverage for the time period at issue in Ward's lawsuit, but could not locate any records. (Dkt. 23-4 at ¶ 23 Dkt. 33-4 at ¶ 23). The parties dispute whether this search was adequate. (Dkt. 23-4 at ¶ 23; Dkt. 33-4 at ¶ 23). Kendall alleges that in the 1970's, it employed a document retention policy at the direction of the New York State Education Department wherein it disposed of or destroyed insurance policy records six years after the expiration of the policy. (Dkt. 23-4 at ¶ 24; Dkt. 33-4 at ¶ 24).

In the course of written discovery in the Ward litigation, Kendall's attorneys located some Board of Education meeting minutes relating to Schlageter's hiring and resignation. (Dkt. 23-4 at ¶ 25; Dkt. 33-4 at ¶ 25). Certain entries in the meeting minutes reflected the Board's consideration of obtaining insurance through a local insurance agent. (Dkt. 23-4 at ¶ 26; Dkt. 33-4 at ¶ 26). An entry from February 1973 referenced a report from "the Insurance Company of North America," which was later acquired by Chubb. (Dkt. 23-4 at ¶ 27; Dkt. 33-4 at ¶ 27). Kendall attorneys determined that the local insurance agency referenced in the minutes still exists today and operates under the name of Albion

Agencies. (Dkt. 23-4 at ¶ 28; Dkt. 33-4 at ¶ 28). In May of 2023, Gail Warne ("Warne"), an employee of Albion Agencies, conducted additional research into any insurance policies issued to Kendall. (Dkt. 23-4 at ¶ 29; Dkt. 33-4 at ¶ 29). In the course of that investigation, Warne contacted The Hartford Insurance Company and Chubb Insurance Company. (Dkt. 23-4 at ¶ 30; Dkt. 33-4 at ¶ 30). The Hartford Insurance Company reported that they had no records of any policies with the District. (Dkt. 23-4 at ¶ 30; Dkt. 33-4 at ¶ 30). Upon information and belief, Chubb did not respond to Warne's inquiry. (Dkt. 23-4 at ¶ 30; Dkt. 33-4 at ¶ 30).

On July 11, 2023, Kendall put Chubb, as the successor in interest to INA, on notice of the existence of Ward's lawsuit and its potential obligations to defend and indemnify Kendall in the litigation. (Dkt. 23-4 at ¶ 31; Dkt. 33-4 at ¶ 31; Dkt. 22-1 at ¶ 7; Dkt. 32-1 at ¶ 7). On August 9, 2023, Chubb advised that it was searching for the policies but disclaimed coverage on the grounds that Kendall failed to provide timely notice of the lawsuit. (Dkt. 23-4 at ¶ 32; Dkt. 33-4 at ¶ 32; Dkt. 22-1 at ¶ 8; Dkt. 32-1 at ¶ 8). In correspondence from Kendall to Century following the denial of coverage, Kendall asked Century to reconsider and stated that it "discovered the existence of this policy . . . while reviewing the board minutes as part of the discovery process in this litigation and, for what its worth, we were reviewing the Board minutes for employment resolutions, not insurance." (Dkt. 22-1 at ¶ 10; Dkt. 32-1 at ¶ 10).

On August 23, or 24, 2023, Chubb confirmed the existence of two policies: one purchased by the Kendall Board of Education in 1968 for general liability insurance from INA, the term of which covers from May 10, 1968 through May 10, 1971, and a second

- 4 -

one purchased in 1971, for general liability insurance from INA, which covered the term from May 10, 1971 to May 10, 1973. (Dkt. 23-4 at ¶ 33; Dkt. 33-4 at ¶ 33; Dkt. 22-1 at ¶ 1; Dkt. 32-1 at ¶ 1). Portions of the policies were missing but Century re-created the missing portions and the parties stipulated that the re-created policies represent the policies in effect during the relevant time period. (Dkt. 23-4 at ¶ 7; Dkt. 33-4 at ¶ 7).

The policies contain the following notice provision:

> 2. The Insured Shall, In The Event Of Injury, Occurrence, Claim Or Suit:
>
> a. Give written notice of the occurrence to the Company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place, and circumstances thereof, and the names and addresses of the injured and the available witnesses.
>
> b. If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons, or other process received by him or his representative.

(Dkt. 22-1 at ¶ 3; Dkt. 32-1 at ¶ 3).

## II. Procedural Background

Kendall commenced this action on March 6, 2024, in New York State Supreme Court, Orleans County. (Dkt. 1-1 at 25-35). Plaintiff's complaint asserts two claims: declaratory judgment that Century is obligated to defend and indemnify Plaintiff in the Ward litigation and a claim for breach of contract. On April 5, 2024, Century removed the action to this Court. (Dkt. 1). On April 22, 2024, Century filed its answer. (Dkt. 7).

On April 16, 2025, Century filed a motion to seal (Dkt. 21) and motion for summary judgment (Dkt. 22). Kendall filed its motion for summary judgment on the same day. (Dkt. 23).

On April 30, 2025, Kendall filed its opposition to the motion to seal. (Dkt. 27). Although Century did not seek leave of Court before doing so, on May 7, 2025, it filed a reply to the motion to seal, which the Court has considered. (Dkt. 27).

On June 27, 2025, the parties filed their responses to the summary judgment motions. (Dkt. 32; Dkt. 33). On July 28, 2025, they filed their respective replies. (Dkt. 34; Dkt. 35).

## DISCUSSION

**I.  Motion to Seal**

"In deciding whether to seal or unseal filed materials, a court properly conducts a three-step inquiry: 'First, the court determines whether the record at issue is a judicial document—a document to which the presumption of public access attaches. Second, if the record sought is determined to be a judicial document, the court proceeds to determine the weight of the presumption of access to that document. Third, the court must identify all of the factors that legitimately counsel against disclosure of the judicial document and balance those factors against the weight properly accorded the presumption of access.'" *Giuffre v. Maxwell*, 146 F.4th 165, 175 (2d Cir. 2025) (quoting *Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th 62, 69-70 (2d Cir. 2023)). To overcome the presumption of public access to judicial documents, the Court must make "specific, on-the-record findings that sealing is necessary to preserve higher values" and any sealing order must be "narrowly tailored to

achieve that aim." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006). The burden is on the proponent of sealing to overcome the presumption of public access to judicial documents. *United States v. Buff*, No. 23-1070-CV, 2024 WL 4262956, at *3 (2d Cir. Sept. 23, 2024).

Documents submitted in connection with a motion for summary judgment are judicial records to which a strong presumption of access applies. *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) ("Conversely, where documents directly affect an adjudication, . . . or are used to determine litigants' substantive legal rights, the presumption of access is at its zenith, . . . and thus can be overcome only by extraordinary circumstances." (citation modified)); *McDay v. Eckert*, No. 1:20-CV-233-JLS-JJM, 2025 WL 2115475, at *1 (W.D.N.Y. July 29, 2025) ("[D]ocuments used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons." (quoting *Lugosch*, 435 F.3d at 121)); *Knight v. MTA - New York City Transit*, No. 19-CV-1428 (PKC) (LB), 2024 WL 4350417, at *27 (E.D.N.Y. Sept. 30, 2024) ("Documents submitted for consideration with summary judgment motions are considered, as a matter of law, 'judicial documents to which a strong presumption of access attaches.'" (quoting *Mark v. Gawker Media LLC*, No. 13-CV-4347 (AJN), 2015 WL 7288641, at *1 (S.D.N.Y. Nov. 16, 2015))).

Century asks the Court to seal a number of exhibits filed in support of the cross-motions for summary judgment that contain or relate to the policies at issue, including the stipulation between the parties agreeing that certain documents comprise the terms and conditions of the policies at issue, Kendall's July 11, 2023 notice of claim, Defendant's

- 7 -

August 9, 2023 letter indicating that the claim was untimely, and Kendall's August 11, 2023 email urging Defendant to reconsider its denial of coverage. Defendant appears to acknowledge that the exhibits are judicial documents and that there is a strong presumption of public access, but argues that sealing is appropriate because the documents were marked confidential during discovery and exchanged pursuant to a stipulation of confidentiality between the parties. In addition, Defendant contends that it would suffer prejudice and be put at a competitive disadvantage in other litigation if the documents are publicly filed. Plaintiff opposes the motion to seal.

Notably, while relevant, the fact that any of the information was subject to protection under a confidentiality protective order entered in this matter does not alone justify granting the motions to seal. *See Uni-Sys., LLC. v. United States Tennis Ass'n, Inc.*, No. 17CV147(KAM)(CLP), 2020 WL 8266015, at *8 (E.D.N.Y. July 6, 2020) ("However, this Court has previously observed that while 'a protective order may provide guidance to the parties regarding what documents it might be appropriate to seal and how such documents should be presented to the Court, the decision to allow documents to be filed under seal in connection with motions and court proceedings is a wholly separate inquiry governed by a different standard than whether to maintain documents disclosed in discovery in confidence.'" (quoting *Johnson v. Federal Bureau of Prisons*, No. 16 CV 3919, 2017 WL 5197143, at *3 (E.D.N.Y. Nov. 9, 2017))); *see also Loma Linda Univ. v. Smarter Alloys, Inc.*, No. 19-CV-607-LJV-MJR, 2024 WL 4932525, at *2 (W.D.N.Y. Dec. 2, 2024) ("[T]he fact that a document was marked as confidential during discovery does not mean that it should be sealed when submitted in connection with a dispositive

motion."); *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 471 (S.D.N.Y. 2017) ("[C]ourts in this district have repeatedly found that the preservation of such bargained-for confidentiality does not overcome the presumption of access to judicial documents."). Further, whether the parties agreed to keep the information confidential at any point of the litigation is not dispositive because the Court's obligation to provide public access to judicial documents operates independently from the parties' positions on whether the matters should be sealed. *See Cantinieri v. Verisk Analytics, Inc.*, No. 21CV6911(NJC)(JMW), 2024 WL 759317, at *2 (E.D.N.Y. Feb. 23, 2024) ("Although the parties are moving jointly to seal these documents . . . and despite the existence of a court-approved protective order allowing the parties to designate materials as confidential and to request permission to file such documents under seal. . . this Court must—given the common law right of public access to judicial documents firmly rooted in our nation's history—ensure that the requested sealing is narrowly tailored and 'is necessary to preserve higher values' above the public's right to transparency." (quoting *Lugosch,* 435 F.3d at 119, 124)). Nor is the Court persuaded by Defendant's conclusory allegations of prejudice to it in future unspecified litigation if their motion to seal is denied.

Put simply, Defendant has not met its burden of demonstrating with specific and particular facts that it will suffer competitive harm if the information at issue is disclosed. The information at issue is directly germane to the matters being decided on the motions for summary judgment and the arguments advanced by Defendant with respect to the confidentiality of this information are too conclusory to overcome the presumption of public access. Accordingly, Defendant's motion to seal is denied. All of the documents

submitted in connection with the pending cross-motions for summary judgment must be filed on the docket in unredacted form.

## II. Cross-Motions for Summary Judgment

### A. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, it finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "The moving party bears the burden of showing the absence of a genuine dispute as to any material fact[.]" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654

F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Where, as here, there are cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

B.  **Analysis of Cross-Motions**

Century moves for summary judgment on the grounds that it properly disclaimed coverage based on Kendall's late notice of Ward's lawsuit without a valid excuse and that alternatively, the claims are not covered under the terms of the policies. Conversely, Kendall cross-moves for summary judgment contending that Century must indemnify and defend Kendall in the Ward litigation because the policies provide coverage for Ward's claims against Kendall and that Kendall provided timely notice of the lawsuit or if untimely, it should be excused as a matter of law. As noted, central to both motions is the issue of whether Kendall provided sufficient notice of the Ward litigation under the policies to trigger Century's duty to defend and indemnify. Because that question is dispositive on the instant motions, the Court addresses it first.

"In New York State,[2] an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Vill. of Sylvan Beach, N.Y. v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995). "An insurance carrier has a duty to 'investigate in good faith and pay covered claims.'" *Gutierrez v. Gov't Emps. Ins. Co.*, 136 A.D.3d 975, 976 (2d Dep't 2016) (quoting *Bi-Economy Market, Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 195 (2008)). The burden of establishing coverage is on the insured. *Fisher v. Geico Gen. Ins. Co.*, 378 F. Supp. 2d 444, 447 (S.D.N.Y. 2005); *see Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 218 (2002) ("Generally, it is for the insured to establish coverage and for the insurer to prove that an exclusion in the policy applies to defeat coverage.").

Here, the question before the Court is whether Century's duty to indemnify or defend Kendall in the Ward litigation was vitiated by Kendall's delayed notice of Ward's lawsuit absent any valid excuse for its delay. The Court concludes that it was.

"Under New York law, 'compliance with the notice provisions of an insurance contract is a condition precedent to an insurer's liability' under policies with effective dates prior to January 17, 2009."[3]   *K.B.K. Huntington Corp. v. Hanover Ins. Co.*, No.

---

[2]   The parties agree that New York law governs Plaintiff's claims.

[3]   Under current New York law, failure to provide notice within a reasonable amount of time will not invalidate a claim absent prejudice to the insurer. But historically—and under the law in effect at the time the policy was drafted—no showing of prejudice was required to vitiate the contract. *B & A Demolition & Removal, Inc. v. Markel Ins. Co.*, 818 F. Supp. 2d 592, 594 (E.D.N.Y. 2011) (New York Insurance Law § 3420(a)(5) requires "insurers to show prejudice as a prerequisite to disclaiming liability based on an untimely notice of claim" but "this new rule applies only to insurance policies that were 'issued or delivered' on or after January 17, 2009").

218CV03135(ADS)(AKT), 2019 WL 1230408, at *3 (E.D.N.Y. Mar. 14, 2019) (quoting *Am. Ins. Co. v. Fairchild Indus., Inc.*, 56 F.3d 435, 438 (2d Cir. 1995)); *Olin Corp. v. Ins. Co. of N. Am.*, 966 F.2d 718, 723 (2d Cir. 1992) ("Under New York law, an insured's failure to comply with a notice-of-occurrence provision is generally a complete defense even if the insurer was not prejudiced by the untimely notification."); *see also Parlux Fragrances, LLC v. S. Carter Enters., LLC*, 204 A.D.3d 72, 85 (1st Dep't 2022) ("A condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." (citation modified)).

Where a policy contains a provision requiring that "notice of an occurrence be given 'as soon as practicable,' . . . or 'as soon as reasonably possible,' . . . then such notice must be given within a reasonable time in view of all of the facts and circumstances." *Hedvat v. Chubb Nat'l Ins. Co.*, No. 24-1194, 2024 WL 4615824, at *1 (2d Cir. Oct. 30, 2024) (citation modified); *Olin*, 966 F.2d at 723 (policy stating that notice of an occurrence be given "as soon as practicable . . . requires that notice be given within a reasonable time under all the circumstances," and "[i]n some cases, even short delays will render a notice untimely" (citation modified)); *Great Canal Realty Corp. v. Seneca Ins. Co., Inc.*, 5 N.Y.3d 742, 743 (2005) (under New York law, "[w]here a policy of liability insurance requires that notice of an occurrence be given 'as soon as practicable,' such notice must be accorded [to] the carrier within a reasonable period of time" (citation modified)). "Where the insured delays in notifying the insurer, the circumstances surrounding the delay dictate whether the reasonableness of the delay is a question of fact for trial or of law for the court to decide."

*Hedvat,* 2024 WL 4615824, at *2. That is, if the insured possesses a valid excuse for the untimeliness, then a determination of its reasonableness is a matter for trial but "where there is no excuse or mitigating factor, the issue poses a legal question for the court." *Id.*; *Olin*, 966 F.2d at 724 ("Generally, the question of whether a delay is excusable is a question of fact for the jury, but of course a delay may be unreasonable as a matter of law when either no excuse is advanced or a proffered excuse is meritless."); *Metro. Prop. & Cas. Ins. Co. v. Sarris*, No. 115CV0780(LEK/DJS), 2017 WL 3252812, at *11 (N.D.N.Y. July 28, 2017) ("[T]he question whether notice was given within a reasonable time may be determined as a matter of law when (1) the facts bearing on the delay in providing notice are not in dispute, and (2) the insured has not offered a legally valid excuse for the delay." (citation modified)).

Here, as noted above, the notice provisions of the policies provide:

> The Insured Shall, In The Event Of Injury, Occurrence, Claim Or Suit:
>
> a.   Give written notice of the occurrence to the Company or any of its authorized agents *as soon as practicable*. Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place, and circumstances thereof, and the names and addresses of the injured and the available witnesses.
>
> b.   If claim is made or suit is brought against the Insured, the Insured shall *immediately* forward to the Company every demand, notice, summons, or other process received by him or his representative.

(Dkt. 22-1 at ¶ 3; Dkt. 32-1 at ¶ 3 (emphasis added)).

Kendall was served with the complaint in the Ward litigation on or around June 16, 2021. It provided notice to Century no earlier than July 11, 2023. On its face, the delay of

- 14 -

two years is unreasonable as a matter of law. *Fairchild Indus.*, 56 F.3d at 440 ("Under New York law, delays for one or two months [in notifying the insurer] are routinely held 'unreasonable.'"); *HKB Hosp. LLC v. Mt. Hawley Ins. Co.*, No. 23-CV-372 (JPO), 2024 WL 4349508, at *3 (S.D.N.Y. Sept. 30, 2024) ("New York courts have held as a matter of law on numerous occasions that . . . inexcusable delays [of two months or less] in providing notice discharged an insurer's obligation to provide coverage." (quoting *Am. Home Assur. Co. v. Republic Ins. Co.*, 984 F.2d 76, 78 (2d Cir. 1993)); *W. Waterproofing Co., Inc. v. Zurich Am. Ins. Co.*, No. 20-CV-3199 (AJN), 2022 WL 329225, at *18 (S.D.N.Y. Feb. 3, 2022) ("Here, the 100-day delay was, as a matter of New York law, untimely."); *Travelers Indem. Co. v. Northrop Grumman Corp.*, 413 F. Supp. 3d 263, 276 (S.D.N.Y. 2019) (holding "nearly six-month delay . . . unreasonable as a matter of law").

Notwithstanding the untimely notice, where an insured can establish a valid excuse for the delay, it may nonetheless be entitled to coverage. *K.B.K. Huntington,* 2019 WL 1230408, at *3 ("For such policies, if an insured fails to provide timely notice as required by the particular policy, then, absent a valid reason for the delay, the insurer is under no obligation to defend or indemnify the insured."). A "plaintiff[ ] ha[s] the burden of showing that there was a reasonable excuse for [a] delay." *Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins. Co.*, No. 08CIV.7745(WHP), 2010 WL 2399558, at *7 (S.D.N.Y. June 14, 2010) (citation modified), *aff'd*, 421 F. App'x 52 (2d Cir. 2011). But "[a]bsent a valid excuse, a failure to satisfy the notice requirement vitiates the policy." *Id.* (quoting *Sec. Mut. Ins. Co. of N.Y. v. Acker–Fitzsimons Corp.*, 31 N.Y.2d 436, 440 (1972)).

While "a justifiable lack of knowledge of insurance coverage may excuse a delay in

reporting an occurrence," "in order to prevail on this theory, the insured must prove not only that it was ignorant of the available coverage, but also that it made reasonably diligent efforts to ascertain whether coverage existed." *Travelers Indem. Co. of Connecticut v. Hudson Excess Ins. Co.*, 805 F. Supp. 3d 507, 519 (S.D.N.Y. 2025) (quoting *Rockland Exposition, Inc. v. Marshall & Sterling Enters., Inc.*, 138 A.D.3d 1095, 1098 (2d Dep't 2016)). However, a lack of knowledge of the existence of a policy does not provide a valid excuse for delay. *Olin,* 966 F.2d at 724-25.

In *Olin,* the Second Circuit explained this distinction:

> This long delay in notification is inexcusable as a matter of law. Even assuming that Olin did not locate the Hanover policies until November 1981, a lack of knowledge of an insurance policy does not excuse a delay in notification of an occurrence. It is true that "delay . . . may be excused if there was a justifiable lack of knowledge of coverage." *Scala v. Scala*, 19 A.D.2d 559, 241 N.Y.S.2d 23, 24 (1963). A justifiable lack of knowledge of coverage, however, is to be distinguished from a lack of knowledge of the existence of a policy. Notice of the content of coverage is within the control of an insurer, and it will thus generally bear some of the responsibility for an insured's lack of knowledge of coverage. *See, e.g., Padavan v. Clemente*, 43 A.D.2d 729, 350 N.Y.S.2d 694, 696 (1973) (insurance company's failure to explain coverage provision of policy to insured led to finding that insured's seven-month delay in giving notice was excusable). An insurer has no power over an insured's retention of a policy, however, and bears none of the responsibility for an insured's loss of a policy. That being the case, we believe that it is the responsibility of the insured, not the insurance company, to keep track of which carriers have provided it with liability insurance. Although toxic torts may expose insurers to liability founded on acts that occurred decades before and cause their loss reserves to be inadequate, we see no reason to increase that burden by allowing insureds to give late notice because they lost the relevant policies.

*Id.*

Here, Plaintiff contends that unlike the environmental claims at issue in *Olin*, the revival of claims under the Child Victims Act could not have been anticipated or

contemplated when the policies were issued.  But the Second Circuit's reasoning in *Olin* is equally applicable here where it would be patently unfair for Century to bear the responsibility for Kendall's lack of awareness of its own policies.  *HKB Hosp. LLC,* 2024 WL 4349508, at *4 ("Having delayed six months in notifying Mt. Hawley about its loss, HKB bears the burden of showing a reasonable excuse for its delay. . . .  To the extent that HKB did not know what insurance it had, 'a lack of knowledge of an insurance policy does not excuse a delay in notification of an occurrence.'" (quoting *Olin*, 966 F.2d at 724)); *McPartlon v. Cont'l Cas. Co.*, No. 115CV1520(GLS/CFH), 2017 WL 4286280, at *4 (N.D.N.Y. Sept. 26, 2017) ("Furthermore, McPartlon failed to satisfy his burden to present a question of fact regarding whether his late notice was justified.  First, McPartlon argues that his delay is excusable because he lacked documentation of the insurance policies, the insurance agent passed away, and the insurance agency closed. . . .  All of these excuses rest on the premise that an insurer bears the burden of an insured's own negligence in maintaining his records and, therefore, fail as a matter of law.").

Moreover, while Kendall may no longer have had possession of the policies due to their destruction pursuant to Kendall's adherence to a policy promulgated by the New York State Education Department,[4] it is undisputed that the information that ultimately led to the

---

[4] Century argues that the New York State Department of Education policies do not direct a required schedule for policies to be destroyed, but rather, indicate the minimum length of time that records must be kept before they may be destroyed.  It contends that this general guidance from New York State did not instruct or require Kendall to destroy the policies and nothing in the policy prevented Kendall from maintaining the policy for longer periods of time.  Because the Court concludes that the question of whether Kendall was required to destroy the policies is not dispositive on the issues before it, it need not resolve this discrepancy.

discovery of the policies came from Kendall's Board of Education minutes, documents within Kendall's own custody and control. And Kendall admits that this discovery was not even in the course of a search for policy documents. *See McPartlon,* 2017 WL 4286280, at *4 (finding lack of valid excuse where plaintiff failed to make diligent efforts to identify his insurance carrier once he received notice of the underlying state court lawsuit). While Kendall notes that the New York State Department of Financial Services informed and reminded insurers of their obligations to assist insureds with locating relevant policies addressing claims revived by the Child Victims Act, this guidance is not relevant to the issues on the instant motions where there are no allegations that Century did not provide such assistance once it was given notice of the claim. Rather, the question here is addressed solely to whether the notice Kendall provided, two years after being served with the claim, was sufficient under the terms of the policies. On these facts, the Court concludes that it was not. In other words, no reasonable jury could find in favor of Kendall.

In sum, much like the plaintiff in *Olin*, Kendall's defense amounts to a lack of knowledge about the *existence* of a policy and not as to the *coverage* provided by the policy, which is not grounds for a finding of a valid excuse as a matter of law. For these reasons, the Court concludes that Defendant's motion for summary judgment is granted and Plaintiff's cross-motion for summary judgment is denied.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to seal (Dkt. 21) is denied and motion for summary judgment (Dkt. 22) is granted. Plaintiff's motion for summary judgment (Dkt. 23) is denied. All of the documents submitted in connection with the

pending cross-motions for summary judgment must be filed on the docket in unredacted form within 7 days. The selection of continuation of exhibits option within CM/ECF should be utilized for this filing. The Clerk of Court is directed to enter judgment in favor of Defendant and close the case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   March 3, 2026
         Rochester, New York